# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF KENTUCKY
## SOUTHERN DIVISION

KENNETH HAMILTON AND ANGIE HAMILTON,                    PLAINTIFFS
HIS WIFE; RICKY ROWE; RODNEY CHANEY;
JOHN BLACKBURN AND JERESSIA BLACKBURN,
HIS WIFE; FRANKLIN ANDERSON AND KATHY
ANDERSON, HIS WIFE; DELORES HALL,
EXECUTRIX OF THE ESTATE OF TEX HALL;
BOBBY SCOTT AND JAMESSA SCOTT, HIS WIFE;
JOE NEWSOME AND JOSEPHINE NEWSOME, HIS
WIFE; TONY WARD AND MELISSA WARD, HIS
WIFE; LARRY OWENS AND SALLY OWENS, HIS
WIFE; MICHAEL WILLIAMS AND JUNE
WILLIAMS, HIS WIFE; GLORIA FAYE LAMBERT,
EXECUTRIX OF THE ESTATE OF DONNIE
DOTSON; JEFFREY HUNTER AND TAMARA
HUNTER, HIS WIFE; GARY TACKETT; GLENN
BROWN AND LORA MARIA BROWN, HIS WIFE;
SHANNON MCKINNEY AND DENIA MCKINNEY,
HIS WIFE; JOHN CHANEY AND COLLENE
CHANEY, HIS WIFE; KENNETH DAMRON AND
FRANCENE DAMRON, HIS WIFE; GARY ONEY;
ALLMAN MAYNARD; PHILLIP TACKETT;
MICHAEL JOHNSON AND CANDICE JOHNSON,
HIS WIFE; JEFF TACKETT AND SARAH TACKETT,
HIS WIFE; KENNETH OQUINN AND MARY
OQUINN, HIS WIFE; EARL CHARLES AND
SHARON CHARLES, HIS WIFE;

V.                                                      CAUSE NO.: _____

3M COMPANY f/k/a MINNESOTA MINING AND                   DEFENDANTS
MANUFACTURING COMPANY, a foreign
corporation;
MINE SAFETY APPLIANCES COMPANY, a foreign
corporation;
AMERICAN OPTICAL CORPORATION, a foreign
corporation;
CABOT CSC CORPORATION, a foreign corporation;
CABOT CORPORATION, a foreign corporation;
AEARO TECHNOLOGIES, LLC; a foreign
corporation;
AEARO LLC, a foreign corporation;

MINE SERVICE COMP ANY, INC., a Kentucky
corporation;
NETWORK SUPPLY A/K/A NETWORK SUPPLY,
INC.
A/K/A ROSWELL, INC., a Kentucky Corporation;
REGINA MINE SUPPLY, INC., a former Kentucky
corporation;
CARBON MINE SUPPLY, LLC, a former Kentucky
corporation;
M & M MINE SUPPLY, INC., a Kentucky corporation;
KENTUCKY MINE SUPPLY COMPANY,
a Kentucky corporation.

## NOTICE OF REMOVAL

3M Company gives notice of removing this case from the Circuit Court of Pike
County, Kentucky, to the United States District Court for the Eastern District of
Kentucky, Southern Division at Pikeville. This is the proper place to remove the state
court case (cause number 21-CI-00646), because this District and Division include Pike
County, where the case is pending.[1]

## INTRODUCTION

This is one of six nearly identical complaints served on or around the same day by
the same attorneys. Collectively, the cases involve 628 Plaintiffs. All six cases name the
same thirteen Defendants. Seven Defendants, including 3M, allegedly made respiratory
protection equipment the Plaintiffs used in their work as coal miners.[2] The other six

---

[1]   28 U.S.C. § 1441(a).

[2]   In addition to 3M, the other Respirator Defendants are Mine Safety Appliances Co.;
American Optical Corp.; Cabot CSC Corp.; Cabot Corp.; Aearo Technologies, LLC;
and Aearo LLC.

Defendants are or were suppliers or distributors of mining equipment, who allegedly sold the respirators to Plaintiffs' employers.[3]

The 3M products at issue are the 3M 8210 N95 respirator and its predecessor products, the 8710, and 8715 respirators. Those products are filtering facepiece respirators that underwent a testing and approval process overseen by the Bureau of Mines and the National Institute for Occupational Safety and Health (NIOSH)—before being sold to the public. NIOSH had and has ongoing supervision over the products' certification and manufacture. The central theme of Plaintiffs' case against 3M, and indeed against the other Respirator Defendants—expressed in all six complaints—is that NIOSH erred by continuing to certify certain respirators, and that 3M and the other Respirator Defendants induced NIOSH's error through a long-running fraud perpetrated on the agency, one presumably continuing through today, given the fact that the 8210 N95 respirator continues to be certified today—indeed, it is a highly recognizable part of the global battle against Covid-19. 3M denies Plaintiffs' allegations.

## GROUNDS FOR REMOVAL

This case is removable under 28 U.S.C. § 1441, because it could have been filed in this Court under both 28 U.S.C. §§ 1331 and 1332.

First, the case presents a federal question, because the Complaint alleges that 3M and other Respirator Defendants misled a federal agency (NIOSH) for decades. These fraud-on-NIOSH allegations, the lynchpin of Plaintiffs' claims, implicate important national interests meriting a federal forum.

---

[3]   The Supplier Defendants are Mine Service Co., Inc.; Network Supply a/k/a Network Supply, Inc. a/k/a Roswell, Inc.; Regina Mine Supply, Inc.; Carbon Mine Supply, LLC; M&M Mine Supply, Inc., and Kentucky Mine Supply Co.

Second, diversity jurisdiction also exists because Plaintiffs are citizens of different states than all properly joined Defendants. The non-diverse Defendants—the Supplier Defendants, who allegedly sold respirators to Plaintiffs' coal mine employers—are improperly joined. Under Kentucky's Middleman Statute, K.R.S. § 411.340, Plaintiffs have no claim against the Suppliers. Even accepting the facts asserted in the Complaint as true, the Suppliers had no reason to conclude that 3M's respirators were defective, and therefore cannot be liable for alleged defects in those products.

## I.   This Court has federal question jurisdiction.

Congress has authorized two paths for claims to "arise under" federal law, for purposes of 28 U.S.C. § 1331.[4] The first, "when federal law creates the cause of action asserted,"[5] is not applicable. But even a state-law claim may "arise under" federal law.[6] The Supreme Court has "condensed" this second path into a clear test.[7] "[F]ederal jurisdiction over a state-law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress."[8]

Where—as here—these elements exist, federal "jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a

---

[4]   *Gunn v. Minton*, 568 U.S. 251, 257 (2013).

[5]   *Id.*

[6]   *Id.* at 258.

[7]   *Id.*

[8]   *Id.*

federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts."[9] The absence of a federal private right of action is "not dispositive of" congressional intent.[10]

Count Four of the Complaint is a claim for intentional misrepresentation and fraud, alleging that 3M duped federal agencies into maintaining the certification of 3M respirators as compliant with federal law.[11] In Plaintiffs' view, 3M didn't comply with NIOSH directives, inform purchasers its respirators couldn't satisfy federal certification requirements, or redesign the respirators to satisfy those federal requirements.[12] Plaintiffs also allege 3M fraudulently represented its respirators complied with federal law when they didn't,[13] and violated a federal statutory duty[14] to disclose that its respirators didn't comply with federal law.[15] And Plaintiffs make similar allegations against the other Respirator Defendants. These allegations intertwine with Plaintiffs' other Counts. For example, Plaintiffs also plead that 3M and other Respirator Defendants were *negligent* in "failing to manufacture a respirator which complied with

---

[9]   *Id.* (quoting *Grable & Sons Metal Prods., Inc v. Darue Eng'g & Mfg.*, 545 U.S. 308, 313–14 (2005)).

[10]   *Grable*, 545 U.S. at 318 (discussing *Merrell Dow Pharma. Inc v. Thompson*, 478 U.S. 804 (1986)).

[11]   Complaint (attached as part of the state court record, Exhibit 1) at ¶ 39. For simplicity, 3M subsequently refers to this count as the "fraud claim."

[12]   *Id.*

[13]   *Id.*

[14]   30 U.S.C. § 820(h).

[15]   Complaint (attached as part of the state court record, Exhibit 1) at ¶ 41.

federal certification regulations."[16] Given the fact that one of the respirators central to Plaintiffs' claims—the 8210 N95 respirator—continues to be certified, Plaintiffs presumably contend that the fraud has continued to date.

Those claims—which 3M denies—necessarily raise a substantial question of federal law. Federal resolution of that issue will not upset the congressionally sanctioned balance between federal and state courts. Plaintiffs' claims thus arise under federal law and fall within the Court's original jurisdiction, under 28 U.S.C. § 1331.

### A.    Plaintiffs' fraud claim "necessarily raises" a federal question, because it can't be evaluated without analyzing and interpreting federal law and regulations.

When a court must resolve a federal issue to rule on the plaintiff's claim, the federal issue is "necessarily raised."[17] For example, resolution of a federal patent issue was necessary to resolving a legal-malpractice claim where the plaintiff had to prove that, had the defendant attorney litigated the federal patent issue, an earlier lawsuit's outcome would have been different.[18] Similarly, interpretation of an Internal Revenue Code provision was a federal issue that was necessarily raised where the defendant

---

[16]    *Id*. at ¶ 28. Plaintiffs further allege that the Respirator Defendants used "governmental approval as a cover for selling" defective products and failed to "implement or enforce a valid quality control program to insure [*sic*] respirators were manufactured in compliance with federal certification regulations." *Id*.

[17]    *Gunn*, 568 U.S. at 259.

[18]    *Id*.

allegedly breached a contractual duty not to violate the provision; the plaintiff also alleged the defendant had fraudulently concealed the violation.[19]

Here, interpretation and analysis of federal regulations is not only central, but essential to Plaintiffs' state-law claims. To prevail on a Kentucky fraud claim, a plaintiff must prove, among other elements, that the defendant made a false representation knowingly or with reckless disregard for the representation's truth.[20] Plaintiffs' fraud claim is about an alleged fraud first made on the federal government before its effects could be felt by the public. In various ways, Plaintiffs allege that 3M's products did not comply with federal regulations and that it was fraudulent for 3M to represent that the products did.[21] But federal agencies (U.S. Bureau of Mines, MSHA and NIOSH)[22] did, in fact, certify the products at issue beginning in 1972 and continue to do so today as to the 8210 N95 respirator.[23] And as Plaintiffs allege, NIOSH's regulations were, during the

---

[19] *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 569 (6th Cir. 2007) (*en banc*).

[20] *Epps Chevrolet Co. v. Nissan N. Am., Inc.*, 99 F. Supp. 3d 692, 706 (E.D. Ky. 2015) (citation omitted).

[21] Complaint (attached as part of the state court record, Exhibit 1) at ¶ 39.

[22] In 1995, MSHA "transferr[ed] the requirements for approval of respirators from 30 CFR part 11 to NIOSH, which is publishing the requirements elsewhere in this separate part of the Federal Register as a new 42 CFR part 84." Respiratory Protective Devices, 60 Fed. Reg. 30398-01, 30399 (June 8, 1995), *available at* 1995 WL 337816.

[23] Exhibit 2 (May 24, 1972 Letter from Bureau of Mines to 3M Company; 8710 respirator) at 1-2; Exhibit 3 (Apr. 14, 1986 Letter from Mine Safety and Health Administration and NIOSH to 3M Co.; 8715 respirator) at 1-2; Exhibit 4 (Aug. 16, 1995 Letter from NIOSH to 3M Co.; 8210 respirator), at 1-2. The Court may take judicial notice of these documents, matters of public record. *See, e.g.*, *Bailey v. City of Ann Arbor*, 860 F.3d 382, 386 (6th Cir. 2017). The Complaint also makes 3M's allegedly fraudulent obtaining of NIOSH's approval "central" to the fraud claim and alleges that "the governmental approval" operated as "cover," Exhibit 1 at ¶ 28, so

relevant time, codified at "30 C.F.R. part 11."[24] Plaintiffs allege that 3M had a federal "statutory duty to disclose federal certification non-compliance," under "30 U.S.C. § 820 (h) (1969-2014)."[25] And they allege that, given this federal statutory duty, 3M should have "disclose[d] that it was selling … respirators which failed to meet the certification and performance criteria under 30 C.F.R. part 11 (1974-1998)."[26]

Given these claims, Plaintiffs must prove either that 3M secretly knew that its respirators did not comply with federal law, even though federal agencies said they did; or that 3M acted with reckless disregard as to its compliance with that federal law. Proving those claims will necessarily require the trier of fact to analyze and interpret federal law and regulations. To prevail, Plaintiffs will have to prove that 3M defrauded federal agencies into maintaining its respirators' certification and that the agencies improperly discharged their duties.

In other words, just as in *Gunn*, to prove their state-law fraud claim, the Plaintiffs will have to prove what federal law required 3M to do, and what federal law required the agencies to do.[27] Plaintiffs' claim thus will "necessarily require application of [federal] law to the facts of [their] case[s]."[28]

---

these documents are properly considered along with the Complaint, *see, e.g.*, *Luis v. Zang*, 833 F.3d 619, 626 (6th Cir. 2016).

[24] Complaint (attached as part of the state court record, Exhibit 1) at ¶ 41.

[25] *Id.*

[26] *Id.*

[27] *Gunn*, 568 U.S. at 259.

[28] *Id.*

## B.    The federal issue is "actually disputed."

The next requirement is straightforward. If the parties disagree about the federal issue's resolution, then it is actually disputed.[29] Of course, 3M hotly disputes any allegations that it perpetuated (and is continuing to perpetuate during a global pandemic) a massive, decades-long fraud on the federal government, such that several federal agencies misapplied federal law when re-certifying 3M's respirators as compliant with 30 C.F.R. part 11. And 3M expects that the other Respirator Defendants will dispute the same types of allegations levied at them. That shows the issue is "actually disputed."[30]

## C.    The federal issue is "substantial," because its resolution is important to the federal system as a whole.

"The substantiality inquiry" considers "the importance to the federal system as a whole."[31] "[I]t is not enough that the federal issue be significant to the particular parties in the immediate suit."[32] To evaluate substantiality, the Sixth Circuit considers:

> (1) whether the case includes a federal agency, and particularly, whether the agency's compliance with a federal statute is in dispute;
>
> (2) whether the federal question is important (*i.e.*, not trivial);
>
> (3) whether a decision on the federal question will resolve the case (*i.e.*, the federal question is not merely incidental to the outcome); and

---

[29]  *Gunn*, 568 U.S. at 259 (citing *Grable*, 545 U.S. at 313).

[30]  *Id.*

[31]  *Id.* at 260.

[32]  *Id.*

(4) whether a decision on the federal question will control many other cases (*i.e.*, the issue is not anomalous or isolated).[33]

"[N]o single factor is dispositive and these factors must be considered collectively, along with any other factors that may be applicable in a given case."[34] Some examples of what does *not* qualify:

- Allegations that a defendant intentionally misinterpreted an Internal Revenue Code provision did *not* present a substantial federal question, where the "case involve[d] no question of whether a government agency ha[d] complied with a statute or regulation."[35] Because an agency's action wasn't at issue, the federal government had only a "limited interest" in the litigation.[36] Resolution of the federal issue would have "provide[d] little if any precedent for future cases," and did not "implicate any broader or more substantial issues,"[37] because the "particular and very narrow" issue had "been at least partially superseded" by statute, so its resolution would "not be controlling over numerous other cases."[38]

---

[33] *Estate of Cornell v. Bayview Loan Serv., LLC*, 908 F.3d 1008, 1015 (6th Cir. 2018) (internal quotation marks and citation omitted).

[34] *Mikulski*, 501 F.3d at 570.

[35] *Mikulski*, 501 F.3d at 569-71.

[36] *Id.* at 570.

[37] *Id.* at 571.

[38] *Id.*

- Likewise, an alleged breach of a consent decree was similarly not important to the federal system as a whole, where it did not concern a federal agency's action.[39]

By contrast, where a federal agency's application of its regulations is central to the dispute (even when the agency itself is not a party), the case *does* present a substantial federal question. In *Grable*, for example, a quiet title action between two private citizens turned on whether the IRS had improperly applied a federal statute. That issue was substantial, because the federal system had "a direct interest in the availability of a federal forum," to adjudicate federal administrative action.[40]

And, allegations very similar to those here—that a federal agency would have acted differently had the defendant not "intentionally withheld the truth about its products and its risks"—also presented a substantial federal issue in the Eastern District of Missouri case *Bader Farms, Inc. v. Monsanto Co.*, even though the allegations were part of a state-law claim.[41] There, the maker of genetically-modified seeds allegedly deceived a sub-agency of the U.S. Department of Agriculture into deregulating the seeds, setting in motion a chain of events that harmed the crops of other farmers not using those seeds. The alleged deception of a federal agency was the first link in the chain. Finding a substantial federal question, the *Bader Farms* court reasoned that

---

[39] *Ohio ex rel. Skaggs v. Brunner*, 549 F.3d 468, 476 (6th Cir. 2008).

[40] *Grable*, 545 U.S. at 315.

[41] *Bader Farms, Inc. v. Monsanto Co.*, No. 1:16-cv-299 SNLJ, 2017 WL 633815, at *2-3 (E.D. Mo. Feb. 16, 2017).

"whether federal regulatory bodies fulfilled their duties with respect to the entities they regulate is 'inherently federal in character.'"[42]

Plaintiffs' allegations, like the claims in *Grable* and *Bader Farms*, satisfy the Sixth Circuit's four substantiality factors. *First*, unlike other cases where this Court has concluded federal jurisdiction is not satisfied,[43] a federal agency's "compliance with [applicable] federal" regulations is plainly "in dispute."[44] In 1972, the Bureau of Mines granted "approval certification of 3M's No. 8710 single-use dust respirator under 30 CFR, Part 11" and told 3M it could "publicize the fact that your product has met the requirements of 30 CFR, Part 11."[45] In 1986, the Mine Safety and Health Administration and NIOSH approved 3M's 8715 respirator and told 3M it could "publicize the fact that the product has met the requirements of 30 CFR Part 11."[46] Similarly, in 1995 NIOSH approved the 3M 8210 respirator and told 3M it could "publicize the fact that this respirator has met the requirements of the Code of Federal Regulations, Title 42, Part 84."[47] Those certifications remained in place for years  as to the predecessor products, and the 3M 8210 respirator remains certified.

---

[42]  *Id.* at *3 (quoting *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 347 (2001)).

[43]  *See, e.g.*, *Wolford v. Bayer Corp.*, No. 7:16-227-KKC-HAI, 2017 WL 5665332, at *4 (E.D. Ky. Nov. 27, 2017) (concluding issue not substantial where it didn't require court to review agency's compliance with federal law).

[44]  *See Mikulski*, 501 F.3d at 570.

[45]  Exhibit 2 at 1-2.

[46]  Exhibit 3 at 1-2.

[47]  Exhibit 4 at 1-2.

These agencies did not act arbitrarily.[48] Like any agency, they applied federal law and rendered a ruling. Plaintiffs allege that the Respirator Defendants defrauded the agencies. This puts the question of whether the agencies properly performed their duties under federal law squarely at the heart of this case. As in *Grable*, the federal system has a direct interest in providing a federal forum to these parties, given that federal administrative action is going to be on trial.  And the dispute will "center [ ] on the action of a federal agency . . . and its compatibility with a federal [regulation]."[49]

*Second*, this federal question is "important," "not trivial."[50] The regulations that Plaintiffs put at issue, including those codified at 30 C.F.R. Part 11, resulted from the "integration of all respirator approval schedules into a single rule."[51] If Plaintiffs are right, then the agencies were prevented from carrying out their regulatory duties under this vital rule, based on a massive fraud. The process by which these federal agencies regulated respirators, and the decisions they made for decades, would be undermined if these claims were true. Plaintiffs' allegations have profound implications for the way the agencies maintain approval over all certified respiratory protection products (including

---

[48]  *See, e.g.*, *U.S. Postal Serv. v. Gregory*, 534 U.S. 1, 10 (2001) ("[A] presumption of regularity attaches to the actions of Government agencies.").

[49]  *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 700 (2006) (discussing *Grable*, 545 U.S. at 313).

[50]  *Mikulski*, 501 F.3d at 570.

[51]  David Spelce *et al.*, *History of U.S. Respirator Approval (Continued) Particulate Respirators*, 36 J. Int'l Soc. Respiratory Protection, vol. 2, 37-55 (2019), *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7307331/.

those being used during the Covid-19 pandemic), not just the particular respirators the Plaintiffs have placed at issue.

*Third*, the federal question is far from "merely incidental to the outcome."[52] Whether the federal agencies correctly exercised their duties under federal law is central to Plaintiffs' fraud claim. If that federal issue is resolved in 3M's favor, then Plaintiffs' fraud claim fails, and their other tort claims are called into serious question.

*Fourth*, resolution of this federal issue will potentially control other cases where plaintiffs allege that 3M perpetrated a fraud on the federal government. 3M was an innovator of filtering-facepiece respirators.[53] Plaintiffs' fraud claims will require the jury determine whether federal agencies correctly applied federal law to maintain the certification of those products. And that resolution will arguably control subsequent cases presenting the same theories.[54]

Plaintiffs say 3M's actions perpetrated a fraud on federal agencies, a fraud allegedly so effective as to cause the agencies to misapply, for decades, regulations they wrote and administered. In this case, as in *Bader Farms*, Plaintiffs' claim is "dependent on a finding that the agency decision . . . was incorrect" because, allegedly, the Defendant had fraudulently not disclosed the truth about its product.[55] And, in this case

---

[52]   *Mikulski*, 501 F.3d at 570.

[53]   *See* Exhibit 5 (3M Science of Safety Product Timeline) (noting 3M "[l]aunched [the] first NIOSH-approved filtering facepiece respirator").

[54]   *See Gunn*, 568 U.S. at 262.

[55]   *King v. Monsanto Co.*, No. 1:19-cv-00129-SNLJ, 2019 WL 5213036, at *2 (E.D. Mo. Oct. 16, 2019) (discussing *Bader Farms*).

as in that one, the claim also "purports to assert a right under federal statute" and "asserts that defendants violated [a] federal statute or regulation."[56] These claims are "facially dependent on the interpretation and application of the federal regulatory process" by which a federal agency "regulat[ed] the use of [the] products."[57] They therefore present a substantial federal issue.[58]

### D.    Resolving this federal issue in federal court doesn't upset Congress's balance between federal and state courts, because state courts don't have a special responsibility for the issue.

A federal court lacks jurisdiction if federal resolution of the federal issue that the state-law claim raises would disrupt the congressionally sanctioned balance between federal and state courts.[59] Courts have found the federal-state balance is upset when states have a special responsibility for regulating the area at issue.

For example, states have a special responsibility for maintaining licensing standards for professionals, such as lawyers.[60] And that responsibility is particularly acute for lawyers, who are essential to state judicial systems and are traditionally officers of those systems.[61] So, the Supreme Court found in *Gunn* that a malpractice claim was not appropriate for federal resolution.

---

[56]    *Id.*

[57]    *Id.*

[58]    *Id.*

[59]    *Gunn*, 568 U.S. at 264.

[60]    *Id.*

[61]    *Id.*

Similarly, courts have found that insurance claims can't appropriately be resolved in federal court without upsetting the balance. Through the McCarran-Ferguson Act and ERISA, Congress has chosen to leave insurance regulation to the states.[62] A suit involving insurance premiums thus could not be resolved in federal court without usurping that congressional choice.[63]

But when cases turn on interpreting federal statutes and regulations, their resolution in federal court does not upset the federal-state balance. So, for example, state breach-of-contract cases requiring interpretation of the Housing and Community Development Act (and its regulations) can be resolved in federal court, without disrupting the congressionally sanctioned balance.[64] This is true even though claims for breach of contract are plainly state-law claims.

It's true here, too. A federal court's resolution of the federal issues Plaintiffs raise won't upset the congressional balance between federal and state courts. Plaintiffs' allegations do not involve an area over which states have any special responsibility.

---

[62] *See* 15 U.S.C. § 1011 *et seq.* (McCarran-Ferguson Act); 29 U.S.C. § 1191(a)(1) (ERISA provision excepting insurance from complete preemption).

[63] *Hartland Lakeside Joint No. 3 Sch. Dist. v. WEA Ins. Corp.*, 756 F.3d 1032, 1035 (7th Cir. 2014).

[64] *Evergreen Square of Cudahy v. Wis. Hous. & Econ. Dev. Auth.*, 776 F.3d 463, 467-68 (7th Cir. 2015); *One & Ken Valley Hous. Grp. v. Me State Hous. Auth.*, 716 F.3d 218, 224-25 (1st Cir. 2013).

Instead, they concern whether federal agencies properly performed their duties under federal law. "This is not an area of concern traditionally reserved to the states."[65]

The Plaintiffs' allegations require a close analysis of federal regulations that govern respirator certification and re-certification. Resolving that issue in federal court doesn't upset any congressionally sanctioned balance between state and federal courts.[66] Indeed, the federal government has a vital interest in the uniformity of such decisions. As one court put it, the "substantial federal question of whether the actions of a federal agency were correct" is one that "deserves the 'hope of uniformity that a federal forum offers on federal issues.'"[67]

Plaintiffs may assert that federal jurisdiction over their claims would improperly open the floodgates to federal court. Thousands of Plaintiffs have respirator claims pending against 3M in Kentucky state courts. But the Court need not be concerned that permitting a removal of some of those cases will improperly swamp federal courts with state-law claims.

*First*, when the seminal *Grable* decision expressed concern about not sweeping "garden variety state tort" claims into federal court, it was concerned about negligence

---

[65] *Chrisopherson v. Bushner*, No. 6:19-03267-CV-RK, 2021 WL 1692151, at *12 (W.D. Mo. Apr. 29, 2021) (concluding "issue of whether FEMA's map changes were proper" and complied with "relevant federal statutes and regulations" was substantial federal question satisfying federal jurisdiction), *appeal docketed*, 2021 WL 1692151 (June 30, 2021).

[66] *See Evergreen Square*, 776 F.3d at 467-68; *One & Ken Valley*, 716 F.3d at 224-25; *Bader Farms*, 2017 WL 633815, at *3.

[67] *Christopherson*, 2021 WL 1692151, at *12 (quoting *Grable*, 545 U.S. at 312).

*per se* liability.[68] The fear was that whenever a plaintiff alleged that a defendant was liable under state law because the defendant had broken federal "mislabeling" law or committed any "other statutory violations," all of those cases would be swept into federal court.[69] The Supreme Court was rightly wary of allowing this without an indication that was Congress's intent.[70]

That is not the situation here. Plaintiffs do not simply assert that 3M was negligent *per se* based on a simple statutory violation or mislabeling. Although the Plaintiffs allege that 3M violated a statutory duty, the core of their fraud theory is that 3M perpetrated such a massive, long-standing fraud on several federal agencies that *the agencies improperly regulated 3M's respirators* for decades, along with the products manufactured by other Respirator Defendants.[71]

This is no "garden variety" tort claim that 3M is negligent because it allegedly violated a statute. Rather, this fraud-on-the-agency theory requires a close look at whether the alleged fraud meant federal agencies couldn't properly do what federal law required of them. Accepting federal jurisdiction over that particular claim does not open the doors of the federal courthouse anytime a plaintiff alleges a defendant's violation of federal law makes it liable under state law.

---

[68] *See Grable*, 545 U.S. at 318-19 (collecting authorities discussing "negligence per se" liability theories).

[69] *Id.* at 319 ("A general rule of exercising federal jurisdiction over state claims resting on federal mislabeling and other statutory violations would thus have heralded a potentially enormous shift of traditionally state cases into federal court.").

[70] *See id.*

[71] Complaint (attached as part of the state court record, Exhibit 1) at ¶¶ 39-44.

*Second*, and relatedly, Plaintiffs' theory in this case is particular to the attorneys representing them. While their counsel makes these extraordinarily detailed (and federally dependent) claims on behalf of clients in this litigation,[72] those claims are unusual. Plaintiffs represented by other counsel typically do not make the same allegations about a massive federal fraud.[73] So federal jurisdiction over *these* Plaintiffs' particular claims will not mean that *every other* plaintiff's run-of-the-mill tort claim against 3M will be removable for the reasons presented here.

*Third*, it's likely that only a small percentage of the respirator claims now pending will be fully worked up and tried. Inherent in efficiently managing complex litigation, bellwether or test cases are used to give parties reliable data on which to base future case management decisions.[74] That's equally true whether the claims are in state or federal court. Given the substantial federal issue that the Plaintiffs raise, a federal

---

[72] For example, 3M directs the Court to the contemporaneously filed notices of removal in *Adams v. 3M Co.*; *Banks v. 3M Co.*; *Combs v. 3M Co.*; *Mounts v. 3M Co.*; and *Yates v. 3M Co.* Those actions involve materially identical complaints, filed on behalf of similarly situated plaintiffs by the same counsel as this action. The Court may take judicial notice of these matters of public record on "its own docket." *Sheldon v. Lundergan Grimes*, No, 14-60-DLB-JGW, 2014 WL 12925536, at *4 (E.D. Ky. Aug. 26, 2014).

[73] *See, e.g.*, Exhibit 6 (Complaint in *Strunk v. 3M Co.* (Leslie Cir. Ct. Aug. 31, 2020)) ¶¶ 38-47. This complaint pleads an ordinary state-law fraud claim, making no allegations about 3M's allegedly defrauding the federal government into certifying its respirators. Again, the Court may take judicial notice of this matter of public record, filed in a Kentucky circuit court. *See, e.g.*, *Blevins v. Phillips*, No. 10-00107-HRW, 2011 WL 5404559, at *2 (E.D. Ky. Nov. 8, 2020) (taking judicial notice of Kentucky circuit court's docket).

[74] Federal Judicial Center, *Manual for Complex Litigation* § 22.315 (4th ed. 2004), *available at* https://www.uscourts.gov/sites/default/files/mcl4.pdf.

court is the appropriate forum for those relatively few test cases. Once they are resolved, the rest of the inventory likely will follow.

Plaintiffs have chosen to allege that 3M committed a massive fraud, so effectively that it allegedly duped federal agencies and prevented them from properly applying federal law. This claim necessarily raises a disputed, substantial issue of federal law with profound implications for several federal agencies' application of federal law, over several decades. Resolving that issue in federal court will not thwart any congressionally sanctioned balance between state and federal courts. The Court should conclude that because Plaintiffs have chosen to assert a fraud claim that arises under federal law, federal question jurisdiction exists.

## II.    This Court has diversity subject-matter jurisdiction.

Subject-matter jurisdiction is proper in this Court under 28 U.S.C. § 1332(a). The alleged amount in controversy exceeds $75,000, exclusive of interest and costs, and the controversy is between citizens of different states.

### A.    The properly joined parties are completely diverse and the fraudulently joined defendants' citizenship must be ignored.

At the time of removal, Plaintiffs were citizens of Kentucky and Tennessee, Virginia, Tennessee, Ohio, Georgia, and West Virginia.[75] All Respirator Defendants are citizens of states different than these. And the citizenship of the Supplier Defendants must be ignored because they are fraudulently joined.

---

[75] *See* Complaint (attached as part of the state court record, Exhibit 1) at ¶ 2 and subparagraphs.

### i. The Respirator Defendants are diverse.

The Complaint sets out the citizenship of the Respirator Defendants.[76] 3M is a publicly-held company formed under the laws of Delaware whose principal place of business is in Minnesota. Accordingly, 3M is a citizen of Delaware and Minnesota.[77]

Mine Safety Appliances Company formed under the laws of Pennsylvania and had a principal place of business in Pennsylvania. Mine Safety Appliances Company merged with Mine Safety Appliances Company, LLC, the surviving successor to the merger. Mine Safety Appliances Company, LLC is a limited liability company formed under the laws of Pennsylvania and all its members are citizens of Pennsylvania. Accordingly, Mine Safety Appliances Company, LLC, the surviving successor by merger with Mine Safety Appliances Company, is a citizen of Pennsylvania.

American Optical Corporation is a corporation formed under the laws of Delaware whose principal place of business is Connecticut. Accordingly, American Optical Corporation is a citizen of Delaware and Connecticut.

Cabot CSC Corporation is a corporation formed under the laws of Delaware whose principal place of business is in Massachusetts. Accordingly, Cabot CSC Corporation is a citizen of Delaware and Massachusetts.

Cabot Corporation is a corporation formed under the laws of Delaware whose principal place of business is in Massachusetts. Accordingly, Cabot Corporation is a citizen of Delaware and Massachusetts.

---

[76] Complaint (attached as part of the state court record, Exhibit 1) at ¶¶ 3-11.

[77] *See Hertz Corp. v. Friend*, 559 U.S. 77 (2010).

Aearo Technologies, LLC is a limited liability company formed under the laws of Delaware whose principal place of business is in Minnesota and all its members are citizens of Minnesota. Accordingly, Aearo Technologies, LLC is a citizen of Minnesota.[78]

Aearo LLC is a limited liability company formed under the laws of Delaware whose principal place of business is in Indiana and all its members are citizens of Minnesota. Accordingly, Aearo LLC is a citizen of Minnesota.

Accordingly, all Respirator Defendants are diverse from all Plaintiffs.

### ii. The Supplier Defendants are fraudulently joined. Each of them is a "Middleman," immune from liability under Kentucky law.

The Supplier Defendants—Mine Service Company, Inc., Network Supply, Regina Mine Supply, Inc., Carbon Mine Supply, LLC, M & M Mine Supply, Inc., and Kentucky Mine Supply Company—are all allegedly citizens of Kentucky.[79] But they have been fraudulently joined, and their citizenship must be ignored.

"Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity."[80] "A defendant is fraudulently joined if it is clear that there can be no recovery under the law of the state on the cause alleged or on the

---

[78]  *See Homfeld II, L.L.C. v. Comair Holdings, Inc.*, 53 F. App'x 731 (6th Cir. 2002).

[79]  Complaint (attached as part of the state court record, Exhibit 1) at ¶¶ 12-17.

[80]  *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 432 (6th Cir. 2012) (internal quotation marks and citation omitted).

facts in view of the law."[81] "The relevant inquiry is whether there is a colorable basis for
predicting that a plaintiff may recover against a defendant."[82]

The court may, "[a]s appropriate," "pierce the pleading and consider summary
judgment evidence."[83] "The court may look to material outside the pleadings for the
limited purpose of determining whether there are undisputed facts that negate the
claim."[84]

The Complaint asserts that the Supplier Defendants supplied the following
products manufactured by the Respirator Defendants: MSA Dustfoe 66, MSA Dustfoe
88, 3M 8710, 3M 8715, 3M 8210, AO 2090, and AO 2090N.[85]

Under Kentucky law, a "middleman" (product supplier) is immune from liability
"arising solely from the distribution or sale of [a] product" unless the plaintiff proves the
middleman "breached an express warranty or knew or should have known" when the
product was sold or distributed that the product was "in a defective condition,
unreasonably dangerous to the user or consumer."[86] "A plaintiff must allege specific or
special knowledge of dangerousness to avoid the middleman statute's protections."[87]

---

[81]  *Id.* at 432-33 (alteration, internal quotation marks, and citation omitted).

[82]  *Id.* at 433 (alteration, internal quotation marks, and citation omitted).

[83]   *Id.*  (internal quotation marks and citation omitted).

[84]  *Id.* (internal quotation marks and citation omitted); *see, e.g.*, *Cline v. Dart Transit Co.*, 804 F. App'x 307, 311-12 (6th Cir. 2020) (concluding plaintiffs failed to show any record evidence established element necessary for colorable claim).

[85]  Complaint (attached as part of the state court record, Exhibit 1) at ¶¶ 18, 20.

[86]  Ky. Rev. Stat. § 411.340.

[87]   *Conrad v. Sherwin Williams Co.*, No. CIV.A. 12–237–JBC, 2012 WL 5332494, at *2 (E.D. Ky. Oct. 29, 2012 (cleaned up).

The Complaint does not bring a claim for breach of express warranty against the Supplier Defendants. Instead, it asserts that the Supplier Defendants are liable because they knew or reasonably should have known that the respirators they distributed were defective.[88] But the Complaint has not stated a colorable claim against the Supplier Defendants.

> **1. Plaintiffs plead that the Respirator Defendants misled everyone; accepting their theory as true, the Supplier Defendants had no reason to know of any product defects.**

Critically, Plaintiffs allege that the Respirator Defendants "made false material representations of [their] products' safety and express warranties in sales literature, advertisements and sales promotional communications;" "unjustifiably marketed and advertised the respirator products to be effective against harmful respirable-sized pneumoconiosis producing dust as would be found in coal mines;" and "concealed and failed to disclose to . . . distributors . . . information which demonstrated the limitations and failures of their safety products."[89] In the story Plaintiffs tell, then, the Respirator Defendants didn't just fool the government, but also the Supplier Defendants.

Plaintiffs then assert that these misrepresentations deceived "the general public at large, including, but not limited to, the Plaintiffs and their employers" regarding "the safety and efficacy of [the] respiratory protection products."[90] According to Plaintiffs, the Respirator Defendants "had superior knowledge of the certification irregularities" of

---

[88]  Complaint (attached as part of the state court record, Exhibit 1), Counts I and II.

[89]  *Id*. at ¶¶ 28, 38-39.

[90]  *Id*. at ¶ 40.

their respirators.[91] As discussed earlier, Plaintiffs contend that the Respirator Defendants deceived even federal agencies into providing "governmental approval" of their products.[92]

It defies reason to expect that the Supplier Defendants had a legal "duty" to rise above the Respirator Defendants' alleged transcending fraud—fraud supposedly capable of deceiving even sophisticated and knowledgeable federal agencies responsible for administering and enforcing highly technical federal regulations.[93] Whether the Supplier Defendants had such a legal duty is a question of law.[94]

And the answer to this question of law is obvious. Plaintiffs would have the Court gut the Kentucky Middleman Statute to impose such a duty. On Plaintiffs' understanding of the Middleman Statute, a Supplier would have to (1) employ an army of industrial hygienists to review thousands of pages of technical and scientific data found in any relevant publication and report on it to its customers; and (2) obtain legal counsel to compare that data with federal regulations, and check behind federal agencies', like NIOSH's, approval of such products. In other words, Plaintiffs' assertion of the Supplier Defendants' legal duty is tantamount to a failsafe on fraud upon the federal government and the public at large. That is not reasonable. That is not ordinary care for a supplier under Kentucky law.[95] And this Court has held that it is reasonable

---

[91] *Id.* at ¶ 41.

[92] *Id.* at ¶ 28.

[93] *Id.*

[94] *Johnson v. Wal-Mart Stores E., LP*, 169 F. Supp. 3d 700, 703 (E.D. Ky. 2016).

[95] *Neblett v. Bros.*, 325 F. Supp. 3d 797, 810 (E.D. Ky. 2018).

for a supplier to depend upon national certifications, especially when the supplier has no role in the product's testing or certification process.[96]

### 2. Plaintiffs' citations to regulations and publications do not support the Supplier Defendants' actual or constructive knowledge necessary to defeat Middleman immunity.

Plaintiffs list eight publications in their Complaint, published over the course of four decades, which they allege the Supplier Defendants should have read.[97] According to Plaintiffs, through deductive reasoning, the Supplier Defendants could have learned from the literature that certain respirators—not specifically identified in the literature—are defective and unreasonably dangerous.[98]

Even if the Supplier Defendants had a duty to read and understand the universe of scientific literature published over the course of decades related to each category of product they supplied, the Complaint's listed publications would not have conveyed information to the Supplier Defendants regarding the specific respirators listed in the Complaint and their alleged defects.

3M is attaching the cited portions of those publications as a composite exhibit.[99] The publications contain general scientific knowledge; none communicates that any

---

[96] *Taylor v. Southwire Tools & Equip.*, 130 F. Supp. 3d 1017, 1023-1024 (E.D. Ky. 2015).

[97] Complaint (attached as part of the state court record, Exhibit 1) at ¶ 48.

[98] *Id.*

[99] Exhibit 7 (Composite of Scientific Literature). The last reference, to a 1974 "Guide to Respiratory Protection" is ambiguous. 3M is unable to include the document in this composite exhibit because it is unclear what document it is. The pages of *Patty's Industrial Hygiene and Toxicology* referenced in the Complaint are also not

particular respirator is defective or unreasonably dangerous, or that a class of respirators have shared defects. Plaintiffs' allegation that the Supplier Defendants possessed knowledge of product defects from reading these publications is fatuous. It bears mentioning that in the 2000s, the Occupational Safety and Health Administration (OSHA), possessing far more knowledge and retrospective perspective than the Supplier Defendants in past decades, conducted a giant retrospective study of filtering facepiece respirators, and considered the various arguments and allegations presented by many Plaintiffs' experts. That study found that these products, including 3M's, achieve the level of protection for which they were designed and can be reliably fit checked, expressly rejecting the litigation-driven theories presented.[100] It would make a mockery of the Middleman Statute to conclude that the Supplier Defendants should have read eight general publications and reached a conclusion different than OSHA.

### 3. Plaintiffs' Counsel's conduct in other cases reveals no intention to defeat Middleman immunity.

Truthfully, Plaintiffs' counsel has no intention of proceeding against the Supplier Defendants, and has joined them solely to defeat diversity. A pattern and practice of failing to engage in even trivial discovery against the nondiverse defendants, followed by their routine dismissal shortly before trial, has emerged in virtually all matters where these Supplier Defendants are named alongside the Respirator Defendants.[101] 3M

---

included in this composite exhibit because 3M cannot locate the pages. 3M will supplement this exhibit once it locates the referenced pages.

[100] Assigned Protection Factors, 71 Fed. Reg. 50122, 50163-64 (Aug. 24, 2006).

[101] *Kent v. Bank of Am., N.A.*, Civ. No. 11-2315, 2012 WL 3582759, at *16 (D. Minn. 2012) (finding that plaintiff's counsel's pattern and practice demonstrated that nondiverse defendants had been joined solely to defeat jurisdiction); *In re Diet*

attaches here dockets which are representative of the pattern and practice from three recent Eastern Kentucky cases in which Plaintiffs' counsel has appeared.[102] The dockets reveal no written discovery propounded on any Supplier Defendant, and no notices of deposition served on any witness associated with a Supplier Defendant. Plaintiffs have no intention of proving *any* case against the Supplier Defendants, much less overcoming the high hurdle of Middleman immunity.

In a similar case removed three years ago involving other plaintiffs' counsel, Judge Caldwell of the Eastern District noted this "troubling" pattern: plaintiffs failing to conduct discovery on non-diverse defendants and dismissing them when their removal-thwarting assistance was no longer required.[103] Judge Caldwell referred to the pattern as enough to "raise an eyebrow here as to what's happening with these suppliers."[104] As the years have worn on, the still-growing pattern should do even more than raise an eyebrow; it should persuade this Court that the Supplier Defendants are fraudulently joined.

To further illustrate Plaintiffs' lack of intent to recover from the Supplier Defendants, three of the Supplier Defendants were administratively dissolved decades ago: Network Supply (1993); Regina Mine Supply, Inc. (1996); and Carbon Mine Supply,

---

*Drugs*, 220 F. Supp. 2d 414, 424 (E.D. Pa. 2002) (finding fraudulent joinder where plaintiffs in mass pharmaceutical litigation had exhibited a pattern and practice of voluntarily dismissing nondiverse pharmacies after one-year time limit for removal had passed).

[102]  Exhibit 8 (Sample Dockets).

[103] Exhibit 9 (Tr. in *Williams v. 3M Co.*; No. 7:18-cv-0063 (E.D. Ky).

[104]  *Id.* at 31-32.

LLC (2013).[105] The Complaint acknowledges this for two of the defendants, describing them as "former" corporations.[106] These administratively dissolved corporations continue to exist only for purposes of winding up and liquidation.[107] "Generally, for the purpose of being sued, a corporation is deemed to exist until its debts are paid."[108] Plaintiffs do not and cannot expect to recover from administratively dissolved corporations. They are joined solely in an attempt to defeat diversity. The Court must ignore the diversity of the fraudulently joined Supplier Defendants.

**B.      The amount in controversy exceeds $75,000.**

This "notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. Evidence establishing the amount is required . . . only when the plaintiff contests, or the court questions, the . . .

---

[105] Exhibit 10 (Ky. Sec'y of State Business Entity Search Record for Network Supply, Inc.), *available at* https://web.sos.ky.gov/ftshow/(S(en0uh2smw0ghymmxu3fkfrcq))/default.aspx?path=ftsearch&id=0280379&ct=09&cs=99999&ce=ZCwhgvtXHNZENfX1YQsUhtr78pL9KGS%2fJ2t55PjDaQdmzJxvqviiQ26E30%2bt8H4%2b (last accessed Oct. 22, 2021); Exhibit 11 (Ky. Sec'y of State Business Entity Search Record for Regina Mine Supply, Inc.), *available at* https://web.sos.ky.gov/ftshow/(S(c1farhs20hw3buczgsszemtz))/default.aspx?path=ftsearch&id=0158429&ct=09&cs=99999&ce=dvxK83peYV2Q34K9ImmFHdBhDwQLDgsa4jcO9q9fXYww%2ffbTnQhnrggaFbCsAQxi (last accessed Oct. 22, 2021); Exhibit 12 (Ky. Sec'y of State Business Entity Search Record for Carbon Mine Supply, LLC), *available at* https://web.sos.ky.gov/ftshow/(S(hsskriaqia3dgbtwzjuebwcr))/default.aspx?path=ftsearch&id=0602985&ct=06&cs=99998&ce=UD6H5u8xpiJ7TTwhCmEX%2b%2f%2bOsywxCrxlY02AJ0AauBvLrGpc7%2fU3bHtsZIa0HT3m (last accessed Oct. 22, 2021).

[106] Complaint (attached as part of the state court record, Exhibit 1) at ¶¶ 14-15.

[107] KRS § 14A.7-020(3).

[108] *Bear, Inc. v. Smith*, 303 S.W.3d 137, 145 (Ky. App. 2010).

allegation."[109] It is apparent from the Complaint that the amount in controversy plausibly exceeds $75,000. Each Plaintiff is plainly capable of satisfying this jurisdictional threshold on his or her own.

In examining the amount in controversy, the Court can consider the categories and nature of the damages asserted in the Complaint. The more numerous and serious the categories, the more plausible it becomes that the amount in controversy is large enough to confer jurisdiction.[110] And the Court can consider punitive damages: when such damages are pleaded, and where "state law at least arguably permits the type of damages claimed," the Court can assume a single-digit punitive damages multiplier and include that multiplier in the jurisdictional math.[111] Kentucky law permits punitive damages.[112]

The categories of damages alleged are numerous and significant. Plaintiffs claim compensatory damages for past and future medical expenses, past and future lost wages and earning capacity, past and future pain and suffering, loss of consortium, and physical disfigurement.[113] Plaintiffs seek punitive damages.[114] Punitive damages are

---

[109] *Dart*, 574 U.S. at 89.

[110] *E.g.*, *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 573 (6th Cir. 2001); *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999).

[111] *Kovacs v. Chesley*, 406 F.3d 393, 397 (6th Cir. 2005); s*ee also Heyman v. Lincoln Nat'l Life Ins. Co.*, 781 F. App'x 463, 471-472 (6th Cir. 2019); *Hollon v. Consumer Plumbing Recovery Ctr.*, 417 F. Supp. 2d 849, 853 (E.D. Ky. 2006).

[112] K.R.S. § 411.184.

[113] Complaint (attached as part of the state court record, Exhibit 1) at Prayer for Relief ¶¶ 1-2.

[114] *Id*. at Prayer for Relief ¶ 3.

included in the amount in controversy.[115] Assuming a very conservative 2:1 punitive damages ratio, the amount of compensatory damages in controversy need only be $25,000 to reach the overall threshold. Just one of the compensatory categories listed above can easily reach that in any personal injury case.

Finally, verdicts in similar respirator lawsuits with just one or two plaintiffs have consistently exceeded $75,000. For example, in *Couch v. MSA*, Knott Circuit Court, No. 10-CI-155, the jury awarded $8 million (including $4 million in compensatory damages) to a single plaintiff in a similar respirator lawsuit.[116] Another example is *Cox v. 3M* (Knox Circuit Court, No. 16-CI-0100) where the jury awarded $67.5 million ($62.5 in punitive damages) to two plaintiffs in a similar respirator lawsuit.[117] Given those previous outcomes, the amount in controversy far exceeds $75,000.

### III.    3M has satisfied the technical requirements to remove the case.

This removal meets the technical requirements of timeliness, joinder, service, and notice.

Fewer than thirty days have elapsed since 3M received the Complaint.[118] Plaintiffs served the Complaint on 3M on October 5, 2021—just twenty days ago.

---

[115] *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 572 (6th Cir. 2001).

[116] WYMT, *Knott County man awarded 8 million dollar judgment in dust mask lawsuit*, https://www.wymt.com/content/news/Knott-County-man-awarded-8-million-dollar-judgment-in-dust-mask-lawsuit--370562261.html (last accessed Oct. 21, 2021).

[117] Exhibit 13 (Judgment in *Cox v. 3M*).

[118] 28 U.S.C. § 1446(b)(2).

3M has obtained the consent of all properly served defendants, *i.e.*, the other Respirator Defendants.[119] As explained above, the Supplier Defendants are not properly joined, and their consent to removal is therefore unnecessary.[120]

The service and notice requirements are met. The state court record is attached as Exhibit 1 to this notice.[121] And 3M will file a written notice of this removal in the Circuit Court of Pike County, a copy of which is attached as Exhibit 14 to this notice. 3M will attach this notice as an exhibit to the state court filing and provide written notice of this removal to Plaintiffs.

* * *

3M gives notice that the above-styled action is removed from the Circuit Court of Pike County, Kentucky, to the United States District Court for the Eastern District of Kentucky, Southern Division at Pikeville. Plaintiffs are notified to proceed no further in state court.

## CERTIFICATE

This is to certify that , on October 25, 2021, there was served upon the Clerk of the Pike Circuit Court a copy of the Notice of Removal of this action, then pending in the Pike Circuit Court, in which said action was designated as *Hamilton, et al. v. 3M Company, et al.*, 21-CI-00646, to the United States District Court for the Eastern District of Kentucky, Southern Division at Pikeville.

---

[119]  28 U.S.C. § 1446(b)(2).

[120]  *Chambers v. HSBC Bank USA, N.A.*, 796 F.3d 560, 564 (6th Cir. 2015).

[121]  28 U.S.C. § 1446(a).

Respectfully submitted,

*/s/ Bryant J. Spann*

Bryant J. Spann, Esq.
Robert H. Akers, Esq.
THOMAS COMBS & SPANN, PLLC
P.O. Box 3824
Charleston, WV 25338-3824
Telephone:  (304) 414-1800
Facsimile:   (304) 414-1801
Email:  bspann@tcspllc.com
        rakers@tcspllc.com

Byron N. Miller, Esq.
Michael J. Bender, Esq.
THOMPSON MILLER & SIMPSON PLC
734 West Main Street, Suite 400
Louisville, KY 40202
Telephone:  (502) 585-9900
Facsimile:   (502) 585-9993
Email:  bmiller@tmslawplc.com
        mbender@tmslawplc.com

*Counsel for Defendant 3M Company*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was electronically filed this 25th day of October, 2021, through the operation of the Court's electronic filing system. Parties may access this filing through the Court's system. A true and correct copy of the foregoing was also mailed and/or served via electronic mail to the following:

Glenn Martin Hammond
Glenn M. Hammond Law Office
P.O. Box 1109
Pikeville, KY 41502
gmhlaw@hotmail.com
*Counsel for Plaintiffs*

Michael B. Martin
Martin Walton Law Firm
699 S. Friendswood Drive, Suite 107
Houston, TX 77456-4580
mmartin@martinwaltonlaw.com
*Counsel for Plaintiffs*

Robert M. Connolly
Carol Dan Browning
Whitney Frazier Watt
Emily L. Startsman
Stites & Harbison, PLLC
400 West Market Street, Suite 1800
Louisville, KY 40202
rconnolly@stites.com
cbrowning@stites.com
wwatt@stites.com
estartsman@stites.com
*Counsel for Defendants Aearo Technologies LLC; Aearo LLC, American Optical Corporation; Cabot CSC Corporation; and Cabot Corporation*

Mike Mullins
Registered Agent
Box 138, U.S. Route 460
Regina, KY 41559
*Defendant Regina Mine Supply*

Calvin R. Tackett
Registered Agent
40 Main Street
Whitesburg, KY 41858
*Defendant Network Supply a/k/a Network Supply, Inc. a/k/a Roswell, Inc.*

M. Trent Spurlock
Alice A. Jones
Dinsmore & Shohl, LLP
101 South Fifth Street, Suite 2500
Louisville, KY 40202
Trent.Spurlock@Dinsmore.com
Alice.Jones@Dinsmore.com
Brenda.Goodhue@Dinsmore.com
*Counsel for Defendant Mine Safety Appliances Company*

Patrick W. Gault
Napier Gault Schupbach & Stevens PLC
730 West Main Street, Suite 400
Louisville, KY 40202
pgault@napiergaultlaw.com
abury@napiergaultlaw.com
*Counsel for Defendants Mine Service Company, Inc. and Kentucky Mine Supply Company*

Chauncey S.R. Curtz
Registered Agent
250 West Main Street, Suite 1400
Lexington, KY 40507
*Defendant Carbon Mine Supply, LLC*

James A. Moore
Registered Agent
3315 Collins Hwy.
Pikeville, KY 41501
*Defendant M & M Mine Supply Company, Inc.*

*/s/ Bryant J. Spann*
*Counsel for Defendant 3M Company*