UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

KENNETH HAMILTON, ET AL.            PLAINTIFFS

VS.            CIVIL ACTION NO. 7:21-CV-87-REW-CJS

3M COMPANY, ET AL.            DEFENDANTS

**3M COMPANY'S RESPONSE IN OPPOSITION
TO PLAINTIFFS' MOTION TO REMAND**

3M Company removed this and five other cases[1] from Kentucky state courts on October 25, 2021. Plaintiffs now have moved to remand. They assert that no basis exists for federal question jurisdiction, and that the Supplier Defendants are not fraudulently joined. Plaintiffs are wrong. The Court has jurisdiction, and should deny the Motion to Remand.

**I. This case "necessarily raises" a substantial federal question, just as *Grable* did.**

Plaintiffs argue that the *only* path to federal question jurisdiction is when a federal law creates the claim: "[s]ince the NIOSH regulations at issue provide no private right of action, federal question cannot be implicated."[2] Plaintiff in *Grable* made the same argument.[3] It fares no better here than it did there.

---

[1] The six actions, including this one, are *Adams v. 3M Co.*, No. 7:21-82; *Banks v. 3M Co.*, No. 7:21-83; *Combs v. 3M Co.*, No. 7:21-84; *Hamilton v. 3M Co.*, No. 7:21-87; *Mounts v. 3M Co.*, No. 7:21-86; and *Yates v. 3M Co.*, No. 7:21-85.

[2] Doc. 23-1 at 28-32, 35 (internal quotation marks and citation omitted).

[3] *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 316 (2005).

1

### A. *Grable* rejects the idea that federal question jurisdiction requires a federal cause of action.

The Supreme Court has long recognized *two* ways a claim may arise under federal law.[4] The first way (and Plaintiffs say, the only way) is simple: if federal law creates the cause of action, it arises under federal law. Some have felt that should be the only path to federal question jurisdiction.[5] But that's not the law. A claim can arise under federal law, even though state law creates it, and even if no federal cause of action exists. That has been true for a century.[6] This "longstanding" doctrine rests on "the commonsense notion" that federal courts should be able to "hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues."[7] That is the basis for federal jurisdiction here.

### 1. *Grable* curtailed *Merrell Dow*.

Plaintiffs chastise 3M for not spending a lot of time talking about *Merrell Dow Pharmaceuticals v. Thompson*, 478 U.S. 804 (1986).[8] Some circuits, pre-*Grable*, had read *Merrell Dow* as "always requir[ing] a federal cause of action as a condition for exercising federal-question jurisdiction."[9] But, like Plaintiffs, those circuits were wrong. *Grable* held that the "longstanding" second way remained valid.[10]

---

[4] *Id.* at 312.

[5] *See, e.g., id.* at 321 (Thomas, J., concurring); *Smith v. Kan. City Title & Tr. Co.*, 255 U.S. 180, 214 (1921) (Holmes, J., dissenting).

[6] *See Smith*, 255 U.S. at 199.

[7] *Grable*, 545 U.S. at 312.

[8] Doc. 23-1 at 35.

[9] *Grable*, 545 U.S. at 311-12.

[10] *Id.* at 312.

The Court granted certiorari in *Grable* to clarify that *Merrell Dow* doesn't mean a private federal cause of action is necessary.[11] Responding to the same argument Plaintiffs advance here, the Court held that *Merrell Dow* did not "overturn[ ] decades of precedent" and "convert[ ] a federal cause of action from a sufficient condition for federal-question jurisdiction into a necessary one."[12] Instead, "the absence of a federal private right of action [is] evidence relevant to, but not dispositive of, the sensitive judgments about congressional intent that § 1331 requires."[13]

*Merrell Dow* means that the second path to jurisdiction isn't broad enough to sweep all "garden variety state tort law" claims, like negligence *per se* claims, into federal court.[14] But, make no mistake, *Grable* emphasizes that absence of a federal cause of action is only the beginning of the analysis, not its end.[15] Later Supreme Court decisions reinforce that. *Gunn* establishes the clear, four-part test that the Notice of Removal applies, to determine whether a claim created by state law arises under federal law.[16] And *Empire Healthchoice* teaches that while such claims are a "small" category, they are also a "special" one, for which jurisdiction undoubtedly exists.[17]

---

[11] *Id.* at 311-12.

[12] *Id.* at 317 (internal citation omitted).

[13] *Id.* at 318 (internal quotation marks and citation omitted).

[14] *Id.* at 318-19.

[15] *Id.*

[16] *Gunn v. Minton*, 568 U.S. 251, 258 (2013).

[17] *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006).

### 2. 3M isn't saying a negligence *per se* claim satisfies *Grable*.

The Complaint doesn't plead a negligence *per se* theory. Plaintiffs admit why: Kentucky law prohibits them from relying on violations of federal law (the centerpiece of their Complaint) to show negligence *per se*.[18] Although the remand brief uses pages to discuss negligence and negligence *per se* liability,[19] the Complaint doesn't rely on negligence *per se*, and the Notice of Removal agreed that negligence *per se* alone doesn't satisfy *Grable*.[20] That's not the issue: Plaintiffs' claims—particularly their fraud claim—are not that kind of "garden variety" tort claim.[21]

### 3. *Grable* jurisdiction is narrow, but it exists.

*Grable* jurisdiction is admittedly narrow. The Notice of Removal acknowledges that.[22] Plaintiffs say that 3M has applied this narrow jurisdiction too broadly.[23] But as the Notice of Removal discusses, Plaintiffs' claims are idiosyncratic based on how their lawyers choose to litigate these actions.[24] Plaintiffs don't dispute that their claims are different from typical Kentucky respirator complaints: here, Plaintiffs put NIOSH, and its regulations, front and center. Federal jurisdiction over *these Plaintiffs'* claims will not sweep into federal court *all* claims involving respirators, as Plaintiffs contend,[25] or even

---

[18]  Doc. 23-1 at 31.

[19]  Doc. 23-1 at 29-32.

[20]  Doc. 1 at 16-17.

[21]  *Id.*

[22]  Doc. 1 at 8-19.

[23]  Doc. 23-1 at 33.

[24]  Doc. 1 at 17-18.

[25]  Doc. 23-1 at 34.

4

claims alleging that federal respirator regulations establish a state standard of care. Plaintiffs' allegations are much more peculiar than that.

## B. Plaintiffs' fraud claim arises under federal law.

Plaintiffs say their fraud claim doesn't implicate the 8210 N95 respirator or current respirator regulations, 42 C.F.R. part 84.[26] Not so. The Complaint says that "with specific reference to this fraud allegations [sic]," Plaintiffs incorporate the previous allegations "with specificity as to each of the following respirators: **MSA DUSTFOE 66, 3M 8710, 8715 & 8210, AO 2090 & 2090N**."[27] These allegations speak for themselves: the 3M 8210 N95 is part of the alleged fraud.

Likewise, Plaintiffs' remand brief tries to reframe the Complaint as concerning only the regulations under which 3M's 8710 and 8715 respirators were certified, 30 C.F.R. part 11.[28] This reframing is unavailing.

First, the reframing contradicts the allegations quoted above. The Complaint alleges that the 8210 N95 is part of the fraud.[29] True, the Complaint alleges more detail about how Plaintiffs think 3M committed fraud with the 8710 and 8715 than with the 8210 N95. But that goes to whether the Complaint alleges the fraud with sufficient particularity for the 8210 N95. It does not eliminate the allegation about the 8210 N95, which remains certified under 42 C.F.R. part 84 to this day. Plaintiffs never attempt to show how the trier-of-fact's required analysis of those regulations would not be a

---

[26] Doc. 23-1 at 15; Doc. 23-1 at 27.

[27] Complaint at ¶ 36 (bold in original; underlining added).

[28] *See* Doc. 23-1 at 34-35.

[29] Complaint at ¶ 36.

5

substantial federal question that should be resolved in federal court, especially given the prominence of NIOSH-certified N95 respirators in the global response to COVID-19.

Relatedly, although the testing standard changed when 42 C.F.R. part 84 was implemented,[30] the two regulatory regimes are structurally analogous on how NIOSH approves respirators and NIOSH's authority to audit quality-control compliance. Under both, a manufacturer applies to NIOSH's Testing and Certification Laboratory, and provides extensive data about its product's performance, plus a written description, drawings, and specifications.[31] NIOSH "examin[es], inspect[s], and test[s]" the product, to see if it satisfies federal regulatory standards for approved respirators.[32] NIOSH also evaluates the "proposed plan for quality control" to see if it satisfies Subpart E's extensive quality-control requirements.[33] Even after approval, under both regimes, NIOSH can audit manufacturers' compliance with the approved quality-control plan.[34]

The Complaint references this NIOSH authority, alleging 3M "fail[ed] to comply with NIOSH directives to improve quality control."[35] NIOSH could have directed 3M "to improve quality control" only after NIOSH had allegedly determined that 3M needed

---

[30] 3M does not mean to suggest this was not an important change. 42 C.F.R. part 84 created new "particulate filter tests" that NIOSH had to administer when evaluating applications. *See* Respiratory Protection Devices, 60 Fed. Reg. 30336-01, 30339 (June 8, 1995), *available at* 1995 WL 337815.

[31] 30 C.F.R. § 11.10(c) (1985); 42 C.F.R. § 84.10(c) (2020) (application); 30 C.F.R. § 11.11(a) and (d); 42 C.F.R. § 84.11(a) and (d) (requirements to provide data). Subsequent references are to these example years.

[32] 30 C.F.R. § 11.10(c); 42 C.F.R. 84.10(c).

[33] 30 C.F.R. § 11.11(c) and 42 C.F.R. § 84.11(c) (Subpart E); *see* 30 C.F.R. § 11.40 to § 11.43; 42 C.F.R. § 84.40 to § 84.43 (quality control).

[34] 30 C.F.R. § 11.43; 42 C.F.R. § 84.43.

[35] Complaint at ¶ 39(a). It makes the same allegation against MSA. *Id.*

6

improved quality control.[36] That allegation thus implicates NIOSH's exercise of its audit authority, under either set of regulations.[37]

Even considering only the 8710 and 8715 and 30 C.F.R. part 11, the remand brief appears to concede that resolving Plaintiffs' claims will require the trier of fact to interpret and apply 30 C.F.R. part 11. In other words, Plaintiffs appear to concede that their Complaint necessarily raises a contested federal issue. This satisfies the first two *Grable* elements.

Although Plaintiffs reason that interpreting and applying 30 C.F.R. part 11 would not be a substantial federal question because 30 C.F.R. part 11 is no longer in force, that misses the point. As the Notice of Removal discusses, the Sixth Circuit uses four substantiality factors, and these factors are satisfied.[38] Plainly, the actions of a federal agency—NIOSH—are at issue.[39] The decision on the federal question is not incidental; Plaintiffs have placed that question front-and-center.[40] The decision here will inform and potentially control other cases brought by plaintiffs making similar allegations, such as the other plaintiffs represented by these lawyers.[41]

The decision is also far from trivial.[42] The coal miner Plaintiffs in these six actions allege that they used one or more of 3M's respirators while working as coal miners. If other actions are any guide, some will ultimately say they wore the respirators every day,

---

[36] *Id.*

[37] *See* 30 C.F.R. § 11.43; 42 C.F.R. § 84.43.

[38] Doc. 1 at 8-9; *see, e.g., Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 569 (6th Cir. 2007) (*en banc*).

[39] *See Mikulski*, 501 F.3d at 569.

[40] *See id.*

[41] *See id.*

[42] *See id.*

7

for decades.43 Federal law recognizes the vital role federal regulations play in protecting miners' safety.44 A decision on the federal question thus would have vital importance, not only to the parties, but also to the agencies that certified the respirators and to federal interests more broadly.

## II. This Court has diversity subject-matter jurisdiction; the fraudulently joined defendants' citizenship must be ignored.

3M's Notice of Removal shows subject-matter jurisdiction is proper under 28 U.S.C. § 1332(a).45 Concerning diversity jurisdiction, Plaintiffs contest only whether two Supplier Defendants—Kentucky Mine Supply Co. and Mine Service Co.—were fraudulently joined. Plaintiffs concede all other diversity allegations, including the amount-in-controversy and fraudulent joinder of the other Supplier Defendants (Network Supply, Regina Mine Supply, Carbon Mine Supply, and M&M Mine Supply).46

### A. The Supplier Defendants are fraudulently joined.

Kentucky Mine Supply and Mine Service Co. are allegedly Kentucky citizens.47 But they have been fraudulently joined; their citizenship must be ignored.48 Plaintiffs

---

43 *See, e.g.*, *Roark v. 3M Co.*, -- F. Supp. 3d --, 2021 WL 5410887, at *1 (E.D. Ky. Nov. 18, 2021) (granting 3M summary judgment based on statute of limitations; discussing how plaintiff testified "he wore 3M 8710 respirators while working in the mines" from 1978 to 1994 and did so "a hundred percent of the time when he was underground" (internal quotation marks and citations omitted)).

44 Federal Coal Mine Health and Safety Act of 1969, Pub. L. 91-173, § 2(g), 83 Stat. 742, 743 (1969).

45 *See* Doc. 1, Notice of Removal, Section II.

46 *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014) (uncontested amount-in-controversy allegation taken as true). Three Supplier Defendants were administratively closed decades ago. Plaintiffs cannot expect to recover against them.

47 Complaint at ¶ ¶ 12-17.

48 3M's Notice of Removal outlined the correct fraudulent joinder and Middleman standards. Doc. 1, Notice of Removal, Section II.

8

assert that they are liable because they knew or reasonably should have known that the respirators they distributed were defective.[49] But Plaintiffs haven't stated a colorable claim against the Supplier Defendants.

### 1. The Supplier Defendants had no legal duty to review the ANSI publication or to contradict OSHA.

The Notice of Removal explains that none of the publications Plaintiffs cite conveyed information to the Supplier Defendants about alleged defects in the specific respirators at issue.[50] The publications contain general scientific knowledge; they don't say particular respirators are defective or unreasonably dangerous, or that any class of respirators has shared defects.

The remand brief abandons all publications except the ANSI ("American National Standards Institute") publication—ANSI Z88.2—from 1980. The single statement central to Plaintiffs' position (from its appendices at A7.2) is that a negative-pressure sealing test "may be difficult or impossible to carry out on valveless respirators."[51] The publication references no particular respirator, nor any defect or unreasonably dangerous condition in any particular respirator.

Plaintiffs rely on an affidavit from an industrial hygienist, Frank Parker, for the proposition that the Supplier Defendants should have reviewed the ANSI publication

---

[49] Complaint at Counts I and II; KRS 411.340. Kentucky courts apply a "reasonableness" standard to what suppliers "reasonably should have known," which sounds in negligence law. *West v. KKI, LLC*, 300 S.W.3d 184, 192 (Ky. Ct. App. 2008). Accordingly, ordinary care is the standard. *Neblett v. Bros.*, 325 F. Supp. 3d 797, 810 (E.D. Ky. 2018).

[50] *See* Doc. 1, Notice of Removal, Section II.

[51] *See* ANSI Z88.2 (1980), Doc. 1-7 at 81.

9

and known 3M's respirators were defective and unreasonably dangerous. That position is objectively false.

Parker baldly asserts that the Supplier Defendants "certainly had the resources to investigate" the ANSI publication to learn about alleged respirator defects but cites no data or supporting materials on which he rests that opinion. He doesn't explain the "resources" required to conduct such an investigation. Nor does Parker cite any materials which demonstrate the Supplier Defendants actually had such "resources." Parker's purported opinion is unsupported conjecture.

Whether the Supplier Defendants had a duty to expend unspecified "resources" to investigate is a question of law [52] with an obvious answer. Parker's suggestion isn't limited to one product or publication and if correct, required the Supplier Defendants to (1) employ an army of industrial hygienists to review thousands of pages of technical and scientific data found in any relevant publication, for *all* products they supplied; (2) obtain legal counsel and experts to compare the data with federal regulations; and (3) report their findings to customers. That is not ordinary care.[53]  Such a legal duty would gut the Middleman Statute.

Plaintiffs' and Parker's reliance on the ANSI publication's appendix is misplaced. Even if the Supplier Defendants had a duty to read and understand decades of scientific literature about every product they supplied, the ANSI publication did not specify the

---

[52] *Johnson v. Wal-Mart Stores E., LP*, 169 F. Supp. 3d 700, 703 (E.D. Ky. 2016).
[53] *Neblett*, 325 F. Supp. 3d at 810.

10

defects Plaintiffs allege against the subject respirators. In fact, the ANSI publication acknowledges filtering facepiece respirators worked as designed.[54]

The ANSI publication also explicitly cautions the reader that its appendix (on which Plaintiffs rely) "is not part of" ANSI Z88.2.[55] Accordingly, the appendix is not part of ANSI's standard, practice guidance and is "included for information purposes only."[56] The appendix's passing mention of potential difficulty in fit-checking filtering facepiece respirators, weighed against the fact that ANSI did not reduce its assigned protection factor for filtering facepiece respirators, confirms that ANSI placed no reliance thereon.

Finally, OSHA—with far more knowledge and perspective than either ANSI or the Supplier Defendants—conducted a giant study of filtering facepiece respirators, and considered the fit-checking criticism. OSHA found that these respirators, including 3M's, *both* achieve the protection levels for which they were designed, *and* can be reliably fit-checked, rejecting the litigation-driven theories Parker presents.[57] It makes a mockery of the Middleman Statute to suggest the Supplier Defendants should have excavated one sentence from a decades-old informational appendix to reach a conclusion different from OSHA's.

Most importantly, this Court has held that *it is reasonable for a supplier to depend upon a product's certification*, especially when the supplier has no role in the product's testing or certification process.[58] The Supplier Defendants had no legal duty to

---

54  *See* ANSI Z88.2 (1980), Doc. 1-7 at 66.

55  *See* ANSI Z88.2 (1980), Doc. 1-7 at 77.

56  *Id.*

57  Assigned Protection Factors, 71 Fed. Reg. 50122, 50163-64 (Aug. 24, 2006).

58  *Taylor v. Southwire Tools & Equip.*, 130 F. Supp. 3d 1017, 1023-1024 (E.D. Ky. 2015).

11

look past the respirators' certification; and this stops the "reasonably should have known" analysis in its tracks.[59] The Supplier Defendants have no duty above ordinary care; they weren't required to act as a failsafe on alleged fraud upon the federal government and the public, or to review scientific literature to challenge OSHA's conclusions and certifications of federal regulatory compliance.

### 2. *National Cottonseed* doesn't help Plaintiffs.

Deviating from the Complaint's allegations, Plaintiffs raise a fresh assertion in their remand brief: they assert the Supplier Defendants should have known of the supposed product defects because of a federal appellate decision, *National Cottonseed Products Association v. Brock*, 825 F.2d 482 (D.C. Cir. 1987). That case upheld a reduced protection factor for respirators used around cotton dust. The decision discusses 3M's challenge to OSHA's 1985 administrative rulemaking assigning disposable respirators an APF of 5 for cotton dust exposure.

Plaintiffs' reliance on *National Cottonseed* is misplaced for two reasons. Initially, the court's review of the administrative record was solely focused on cotton dust exposure.[60] The subject Complaint involves coal, not cotton dust. Additionally, Plaintiffs ignore the rest of the story. In a monumental retrospective study, OSHA abandoned its *National Cottonseed* position, concluding that filtering facepiece respirators could be reliably fit checked.[61] *National Cottonseed* is a dead letter for this case.

---

[59] Plaintiffs acknowledge the respirators were certified but claim 3M procured certification through fraud. Complaint at ¶ 39(e).

[60] 825 F.2d at 493. Plaintiffs also cite 29 C.F.R. 1910.1043 for the proposition that a lower protection factor currently applies to respirators used around cotton dust. OSHA has not revised the specific cotton dust standard. But more significantly, cotton dust regulations would not alert coal-industry Supplier Defendants to supposed respirator defects.

[61] Assigned Protection Factors, 71 Fed. Reg. 50122, 50163-64 (Aug. 24, 2006).

12

### 3. The Complaint asserts the Supplier Defendants couldn't have known of the defects Plaintiffs claim; and years of pattern and practice demonstrate Plaintiffs' counsels' lack of intention to defeat Middleman immunity.

Plaintiffs say that because this Court has previously rejected fraudulent joinder arguments advanced by 3M, its position should likewise fail here. But Plaintiffs' unique fraud allegations in this action require a fresh analysis of fraudulent joinder. Additionally, Plaintiffs' counsels' pattern and practice of joining the Supplier Defendants solely to defeat diversity is now more fully and indisputably established.

Unlike the earlier cases, Plaintiffs here say the Respirator Defendants defrauded not just the government, *but also the Supplier Defendants*. They say the Respirator Defendants "made false material representations of [their] products' safety and express warranties in sales literature, advertisements and sales promotional communications;" "unjustifiably marketed and advertised" the respirators as "effective against harmful respirable-sized pneumoconiosis producing dust as would be found in coal mines;" and "concealed and failed to disclose to . . . distributors . . . information which demonstrated the limitations and failures of their safety products."[62] Plaintiffs say these actions deceived "the general public at large" regarding "the safety and efficacy" of the respirators.[63] And according to Plaintiffs, the Respirator Defendants "had superior knowledge of the certification irregularities" of their respirators.[64]

It defies reason to expect that the Supplier Defendants had a legal "duty" to uncover the Respirator Defendants' alleged transcending fraud—a sophisticated fraud

---

[62] Complaint at ¶ ¶ 28, 38-39.

[63] *Id.* at ¶ 40.

[64] *Id.* at ¶ 41.

13

supposedly capable of deceiving even the knowledgeable federal agencies responsible for highly technical federal regulations. If Plaintiffs' fraud allegations are believed, there is no way the Supplier Defendants "reasonably should have known" of any product defects alleged in the Complaint.

Plaintiffs' counsel has no intention of proceeding against the Supplier Defendants. In virtually all matters where these Supplier Defendants are named, Plaintiffs' counsel has failed to engage in even trivial discovery against these non-diverse parties—apparently joined to defeat diversity—and routinely dismiss them before trial.

3M attached to its Notice of Removal dockets representative of this pattern and practice, from three recent Eastern Kentucky cases in which Plaintiffs' counsel has appeared.[65] The dockets reveal *no* written discovery propounded on any Supplier Defendant, and *no* notices of deposition served on any witness associated with a Supplier Defendant. Plaintiffs have no intention of proving *any* case against the Supplier Defendants, much less overcoming the high hurdle of Middleman immunity.

In a similar case removed three years ago (involving other plaintiffs' counsel), Judge Caldwell of the Eastern District noted this "troubling" pattern: plaintiffs failing to conduct discovery on non-diverse defendants and dismissing them when their removal-thwarting presence was no longer required.[66] Judge Caldwell referred to the pattern as enough to "raise an eyebrow here as to what's happening with these suppliers."[67] As the years have worn on, the still-growing pattern should do more than raise an eyebrow; it should persuade this Court that the Supplier Defendants are fraudulently joined.

---

[65] Doc. 1, Notice of Removal, Exhibit 8 (Sample Dockets).

[66] Doc. 1, Notice of Removal, Exhibit 9 (Tr. in *Williams v. 3M Co.*; No. 7:18-cv-0063 (E.D. Ky)).

[67] *Id.* at 31-32.

14

## III. Conclusion.

The Court has subject-matter jurisdiction, for a variety of reasons discussed in 3M's Notice of Removal. The Court should deny the Motion to Remand.

Respectfully submitted,

THOMPSON MILLER & SIMPSON PLC


*/s/ Byron N. Miller*
Byron N. Miller
Michael J. Bender
734 West Main Street, Suite 400
Louisville, KY 40202
Telephone: (502) 585-9900
Facsimile: (502) 585-9993
bmiller@tmslawplc.com
mbender@tmslawplc.com
mhess@tmslawplc.com
mhendricks@tmslawplc.com

Bryant J. Spann
Robert H. Akers
THOMAS COMBS & SPANN
300 Summers Street, Suite 1380
Charlestown, WV 25301
Telephone: (304) 414-1800
Facsimile: (304) 414-1801
BSpann@tcspllc.com
RAkers@tcspllc.com
JBrowne@tcspllc.com
LGibson@tcspllc.com
*Counsel for Defendant 3M Company*

15

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was electronically filed this 15th day of December, 2021, through the operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

| | |
|---|---|
| Glenn Martin Hammond<br>Glenn M. Hammond Law Office<br>5476 North Mayo Trail<br>P.O. Box 1109<br>Pikeville, KY 41501<br>gmhlaw@hotmail.com<br>erin@gmhlawoffice.com<br>*Counsel for Plaintiffs* | Michael B. Martin<br>Martin Walton Law Firm<br>699 S. Friendswood Drive, Suite 107<br>Houston, TX 77546-4580<br>mmartin@martinwaltonlaw.com<br>rhonda@martinwaltonlaw.com<br>*Counsel for Plaintiffs* |
| Johnny Givens<br>Givens Law Firm, PLLC<br>240 Trace Colony Park Drive, Suite 100<br>Ridgeland, MS 39157<br>johnny@givens-law.com<br>jeanreid@givens-law.com<br>*Counsel for Plaintiffs* | M. Trent Spurlock<br>Alice A. Jones<br>Dinsmore & Shohl, LLP<br>101 South Fifth Street, Suite 2500<br>Louisville, KY 40202<br>Trent.Spurlock@Dinsmore.com<br>Alice.Jones@Dinsmore.com<br>Brenda.Goodhue@Dinsmore.com<br>*Counsel for Defendant Mine Safety Appliances Company, LLC* |
| Robert M. Connolly<br>Carol Dan Browning<br>Whitney Frazier Watt<br>Emily L. Startsman<br>Stites & Harbison, PLLC<br>400 West Market Street, Suite 1800<br>Louisville, KY 40202<br>rconnolly@stites.com<br>cbrowning@stites.com<br>wwatt@stites.com<br>estartsman@stites.com<br>*Counsel for Defendants American Optical Corporation, Cabot CSC Corporation, Cabot Corporation, Aearo Technologies, LLC and Aearo, LLC* | Patrick W. Gault<br>Napier Gault Schupbach & Stevens PLC<br>730 West Main Street, Suite 400<br>Louisville, KY 40202<br>pgault@napiergaultlaw.com<br>abury@napiergaultlaw.com<br>*Counsel for Defendant Mine Service Company, Inc. and Kentucky Mine Supply* |

4876-8987-2134, v. 1

| | |
|---|---|
| Mike Mullins<br>Registered Agent<br>Box 138, U.S. Route 460<br>Regina, KY 41559<br>*Regina Mine Supply* | Chauncey S.R. Curtz<br>Registered Agent<br>250 West Main Street, Suite 1400<br>Lexington, KY 40507<br>*Carbon Mine Supply, LLC* |
| James A. Moore<br>Registered Agent<br>3315 Collins Hwy.<br>Pikeville, KY 41501<br>*M & M Mine Supply Company, Inc.* | |

*/s/ Byron N. Miller*
*Counsel for Defendant 3M Company*

17